2018 BNH 004    Note:  This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 17-10500-BAH
                                                                                                Chapter 7
Kevin C. Murphy and
Sharon M. Murphy,
        Debtors

Cheryl Iudice,
        Plaintiff

v.                                                                                              Adv. No. 17-1055-BAH

Kevin C. Murphy,
        Defendant

*Christopher M. Candon, Esq.*
*Sheehan, Phinney, Bass + Green, PA*
*Manchester, New Hampshire*
*Attorney for Plaintiff*

*Arthur O. Gormley, III*
*Gormley & Gormley, PC*
*Nashua, New Hampshire*
*Attorney for Debtor/Defendant*

## MEMORANDUM OPINION

### I. INTRODUCTION

Cheryl Iudice (the "Plaintiff") filed a two-count complaint (Doc. No. 1) (the "Complaint") seeking to except a state court judgment debt owed by Kevin Murphy (the "Defendant") from Murphy's discharge pursuant to 11 U.S.C. § 523(a)(2)(A) (Count I) and/or § 523(a)(6) (Count II).  After being served with the Complaint, the Defendant filed an answer (Doc. No. 6) (the "Answer").  Thereafter, the Plaintiff filed a motion under Rule 12(c) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of

Bankruptcy Procedure, seeking judgment on the pleadings with respect to both counts of the Complaint (Doc. No. 14).  The Defendant filed a cross-motion seeking judgment only as to Count I (Doc. No. 18).  The Court heard argument on the motions and took them under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  JUDGMENT ON THE PLEADINGS STANDARD

A motion for judgment on the pleadings is governed by Rule 12(c), which provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c); see Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 7 (B.A.P. 1st Cir. 2015).  Thus, a party may move under Rule 12(c) once the defendant has filed his answer.  Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 42 n.3 (1st Cir. 2017).

A motion for judgment on the pleadings under Rule 12(c) is treated much like a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Best, 540 B.R. at 7 (citing Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007)).  A motion for judgment on the pleadings examines "the undisputed factual record expanded by the defendant's answer to determine the merits of the claim as revealed in the formal pleadings."  Pimental v. Wells Fargo Bank, N.A., C.A. No. 14-494S, 2015 WL 5243325, *4 (D.R.I. Sept. 4, 2015) (quoted in Best, 540 B.R. at 7).  Courts must accept all of the non-moving party's well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party.  Rezende, 869 F.3d at 42.  "[A] court may enter judgment on the pleadings only if the properly considered facts conclusively establish

the movant's point."  R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d. 178, 182 (1st Cir. 2006) (quoted in Best, 540 B.R. at 8).

In ruling on a motion for judgment on the pleadings, courts are entitled to look at the pleadings, any exhibits attached to the pleadings, and any documents sufficiently referenced in the pleadings.  Best, 540 B.R. at 8.  In addition, courts may take judicial notice of any entries on the dockets of the main bankruptcy case and any adversary proceeding as well as the claims register.  Id.

## III.  BACKGROUND

The Court draws the following factual background from the Complaint, the Answer, and a decision issued by a Massachusetts state court (the "State Court") on December 22, 2016, in the underlying litigation between the parties (the "State Court Decision").[1]  The Plaintiff and the Defendant were family friends.  The Plaintiff inherited a home from her father in Saugus, Massachusetts.  She contacted the Defendant, who had a construction and remodeling business in New Hampshire, about the possibility of doing some work on the property.  In connection with these discussions, the Plaintiff paid a $10,000.00 deposit to the Defendant on September 5, 2012.  The Defendant assured the Plaintiff that the deposit was refundable; however, the only writing memorializing this deposit was a receipt signed by the Defendant which simply acknowledged payment of $10,000.00 for "Deposit on future one or two family contract for scheduling purposes."  The Plaintiff decided not to go through with the project and, on October 9, 2012, requested that the Defendant return the deposit.  The Defendant refused to return the deposit.  On March 5, 2013, the Plaintiff's attorney sent the Defendant a letter demanding the return of the

---

[1] The State Court Decision was attached to the Complaint.

3

deposit. The Defendant once again refused to refund the deposit. On January 29, 2014, the Plaintiff's attorney sent the Defendant a demand letter pursuant to Massachusetts General Laws Chapter 93A ("Chapter 93A"). The Defendant once again refused to return the deposit and made no offer of settlement.

Thereafter, the Plaintiff sued the Defendant in State Court. After a jury-waived trial, the State Court issued the State Court Decision addressing each of the Plaintiff's seven claims.[2] The State Court concluded that the Defendant had been unjustly enriched in the amount of $10,000.00, the amount of the deposit she paid to the Defendant, as the Defendant did not perform any services or other work for the Plaintiff, he did not purchase any materials, and he did not pay any subcontractors. He simply prepared an estimate for the Defendant. The State Court also concluded that the Defendant violated Chapter 93A by collecting a $10,000.00 deposit "without a clear writing detailing the circumstances under which the deposit might be withheld or forfeited" and by his "failure to return the deposit upon demand, where the defendant had performed no services nor provided any materials to the plaintiff prior to her demand for return of the deposit." The State Court further found that the Defendant's "failure to return the deposit, or to make any offer of settlement, after three written demands, including the Chapter 93A demand letter sent to him in January 2014" entitled the Plaintiff to recover multiple damages and attorney's fees. The State Court doubled the Plaintiff's damage award to $20,000.00. He also awarded $30,000.00 in attorney's fees plus statutory interest and costs. At

---

[2] The Plaintiff's State Court complaint contained claims for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; (4) negligent misrepresentation; (5) violation of M.G.L. Chapter 93A; (6) violation of M.G.L. Chapter 142A; and (7) violation of M.G.L. Chapter 93, Section 48. The State Court found in favor of the Plaintiff on two counts: her unjust enrichment claim and her Chapter 93A claim.

4

the time the judgment entered on December 22, 2016, the Defendant owed the Plaintiff $57,915.05.

The Defendant filed chapter 7 bankruptcy on April 6, 2017. The Plaintiff filed a non-dischargeability complaint on July 10, 2017, seeking to except the judgment from discharge pursuant to § 523(a)(2)(A) and (a)(6). At the time the adversary proceeding was filed, the Debtor's obligation to the Plaintiff had increased to $61,853.36.

**III. DISCUSSION**

The Plaintiff contends that collateral estoppel entitles her to a ruling by this Court that the Defendant's debt should be excepted from discharge pursuant to § 523(a)(2)(A) and (a)(6) based on the findings and rulings in the State Court Decision. The Defendant denies that collateral estoppel entitles her to such a ruling and contends that, instead, he is entitled to judgment in his favor with respect to the Plaintiff's claim under § 523(a)(2)(A) based on the State Court Decision.[3]

**A. Issue Preclusion**

The Court notes preliminarily that the ordinary rules of issue preclusion and claim preclusion apply in most actions in bankruptcy, including adversary proceedings under § 523(a) to except debts from discharge. McCory v. Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001) (citing Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991); FDIC v. Shearson-American Express, Inc., 996 F.2d 493, 497 (1st Cir. 1993)); see Backlund v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009); Chapman v. Tracey (In re Tracey), 250 B.R. 468, 471

---

[3] The parties use the term "collateral estoppel" throughout their pleadings. The Court will use the term "issue preclusion," which encompasses the doctrine of collateral estoppel and is a more descriptive term. Gray v. Tacason (In re Tacason), 537 B.R. 41, 50 n.9 (B.A.P. 1st Cir. 2015) (citing Bobby v. Bies, 556 U.S. 825, 830 n.1 (2009) and quoting Yeager v. United States, 557 U.S. 110, 120 n.4 (2009)).

5

(Bankr. D.N.H. 2000).  Bankruptcy courts look to state law to determine the preclusive effect of a prior state court judgment.  Spigel, 260 F.2d at 33 (citing New Hampshire Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995)); Stanley-Snow, 405 B.R. at 18 (citing Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985) (stating the "full faith and credit" statute of 28 U.S.C. § 1738 "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered.")).  Because the State Court Decision was issued in Massachusetts, the Court must look to Massachusetts law to determine its preclusive effect.

The United States Bankruptcy Appellate Panel for the First Circuit (the "First Circuit BAP") has explained that issue preclusion applies under Massachusetts law when:

1. there was a final judgment on the merits in the prior adjudication;
2. the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication;
3. the issue in the prior adjudication was identical to the issue in the current adjudication; and
4. the issue decided in the prior adjudication was essential to the earlier judgment.

O'Rorke v. Porcaro (In re Porcaro), 545 B.R. 384, 395 (B.A.P. 1st Cir. 2016) (citations and quotations omitted).  In addition, courts must find that appellate review of the state court decision was available.  Id.  The party asserting the doctrine has the burden of proving that all of the requirements have been met.  Id.

The record in this case is clear that a final judgment on the merits issued in the State Court suit (which was a suit between the Plaintiff and the Defendant) and that appellate review of the State Court Decision was available.  Thus, the only potential bars to the application of issue preclusion in this proceeding are whether the issues in the two proceedings are identical and whether the matters decided in the State Court were essential to the State Court Decision.

**B.  Non-Dischargeability under 11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) specifically excepts from discharge "any debt . . . for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

6

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).  To establish non-dischargeability under § 523(a)(2)(A), a creditor must show by a preponderance of the evidence:

1. the debtor made a knowingly false representation or one made in reckless disregard of the truth;
2. the debtor intended to deceive;
3. the debtor intended to induce the creditor to rely upon the false statement;
4. the creditor actually relied upon the misrepresentation;
5. the creditor's reliance was justifiable; and
6. the reliance upon the false statement caused damage.

Spigel, 260 F.3d at 32 (citing Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)).

In Count I of the Complaint, the Plaintiff described the Debtor's false representation as follows:  "The Debtor represented to the Plaintiff that the Deposit monies would be available to the Debtor, only if the Plaintiff decided to go forward with the Project (the "Representation")." Complaint ¶ 36.  The Plaintiff further alleged:  "[T]he Debtor knew, at the time the he made the Representation to the Plaintiff, that the Representation was false." Id. ¶ 39.  In the underlying litigation in count four of the State Court complaint, the State Court was asked to rule on the Plaintiff's claim that the Defendant should be found liable for negligent misrepresentation.  To succeed on a claim for negligent misrepresentation in Massachusetts, a plaintiff must establish that "the defendant (1) in the course of its business; (2) supplied/provided false information for the guidance of another; (3) upon which the plaintiff justifiably relied to his financial detriment; and (4) that the defendant failed to exercise reasonable care or competence in obtaining or communicating that information." Deheer v. Am. Academy of Podiatric Practice Mgmt., 28 Mass. L. Rptr. 204 (Mass. Sup. Ct. Jan. 31, 2011) (citing Cole v. New England Mutual Life Ins. Co., 729 N.E.2d 319 (2000); Fox v. F&J Gattozzi Corp., 672 N.Ed. 2d 547 (1996)); see also GFS Trust v. Bristol Compressors Int'l, 30 Mass. L. Rptr. 160 (Mass. Sup. Ct. May 24, 2012).

7

In ruling on the Plaintiff's negligent misrepresentation claim, the State Court stated in full:

> Although Murphy made statements upon collection of the deposit which led Iudice to believe that he would refund the deposit [if] the project did not move forward, the court cannot find, by a preponderance of the evidence, that at the time they were made these statements were made with the intent to mislead, or that Murphy knew them to be false at the time he made them. For these reasons, the plaintiff cannot prevail under count four.

State Court Decision at 3. Thus, the State Court Decision specifically addressed the first and second elements of the Plaintiff's § 523(a)(2)(A) claim brought in this proceeding. The State Court ruled that the evidence did not establish that the Defendant "knew them [the statements] to be false" (i.e., correlating to the § 523(a)(2)(A) element that he "made a knowingly false representation") or that he had "the intent to mislead" (i.e., that "the debtor intended to deceive"). The issues underlying these two rulings are identical to the ones the Court is called to rule upon in the Plaintiff's § 523(a)(2)(A) claim, thus meeting the identicalness requirement for issue preclusion. Only one of those findings, however, was <u>essential</u> to the State Court's adjudication, the last requirement for applying issue preclusion. The Court can only apply issue preclusion to the false statement finding. Intent is not an issue in negligent misrepresentation.[4] Therefore, the Court cannot apply issue preclusion to the State Court's intent finding.

The State Court did not specifically rule that the Defendant did not make a false representation in reckless disregard of the truth, an alternative to the knowingly false statement requirement under § 523(a)(2)(A). The State Court, however, was not required to make such a finding, as recklessness is not an element of a negligent misrepresentation claim in Massachusetts. Thus, contrary to the parties' contentions, the State Court Decision does not

---

[4] "Claims for negligent misrepresentation and intentional misrepresentation … differ in that the latter requires proof of the intent of the misrepresenting party." GFS Trust, 30 Mass. L. Rptr. 160 (citing Sound Techniques v. Hoffman, 737 N.E.2d 920 (2000)); see also Fox, 672 N.E.2d at 551 (indicating a plaintiff need not prove intent for a negligent misrepresentation claim).

8

warrant judgment in favor of either party on Count I of the Complaint as the Court is unable to conclude that the State Court ruled that the "the debtor made a knowingly false representation <u>or one made in reckless disregard of the truth</u>," the first element of the Plaintiff's claim under § 523(a)(2)(A).  For that reason, the Court must deny the parties' cross-motions for judgment on the pleadings with respect to Count I, as the findings in the State Court Decision do not preclude the Court from determining recklessness or the other remaining elements of the Plaintiff's § 523(a)(2)(A) claim.

### C. Non-Dischargeability under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) specifically excepts from discharge "any debt . . . for willful and malicious injury by a debtor to another entity or the property of another entity."  11 U.S.C. § 523(a)(6).  To except a debt from discharge under § 523(a)(6), a creditor must show by a preponderance of the evidence:

1. the debtor injured him or his property;
2. the debtor's actions were willful; and
3. the debtor's actions were malicious.

<u>Gray v. Tacason (In re Tacason)</u>, 537 B.R. 41, 49 (B.A.P. 1st Cir. 2015).  The First Circuit BAP has further explained that determining nondischargeability under § 523(a)(6) involves the following four-part test:

1. the creditor suffered an injury;
2. the injury was the result of the debtor's actions;
3. the debtor intended to cause the injury or there was a substantial certainty the injury would result from the debtor's act; and
4. the debtor had no just cause or excuse for the action resulting in injury.

<u>Id.</u> at 50; <u>B.B. v. Bradley (In re Bradley)</u>, 466 B.R. 582, 587 (B.A.P. 1st Cir. 2012) (quoting <u>Hermosilla v. Hermosilla (In re Hermosilla)</u>, 430 B.R. 13, 22 (Bankr. D. Mass. 2010)); <u>see also</u> <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 62 (1998).  Element three of this test addresses the "willful" requirement, and element four addresses the "malicious" requirement.  The Plaintiff contends

that the Defendant's obligation to her can be excepted from discharge as one for a willful and malicious injury within the meaning of § 523(a)(6) based on the preclusive effect of the State Court Decision.

The First Circuit BAP has acknowledged that Chapter 93A violations and § 523(a)(6) claims "are not synonymous." Porcaro, 545 B.R. at 398. A state court could find a violation of Chapter 93A for behavior that lacks the characteristics of the misconduct necessary to support a finding of nondischargeability under § 523(a)(6). Id. The First Circuit BAP has clarified further, however, that "this does not mean that a Ch. 93A judgment may not be given preclusive effect in a § 523(a)(6) nondischargeability proceeding." Id. at 399. Rather, courts must determine in each case whether issue preclusion standards have been met based on the record before it.

In order to determine whether the Plaintiff's claims under Chapter 93A and § 523(a)(6) have identical elements for purposes of determining the applicability of issue preclusion, a review of Chapter 93A is necessary. Section 2(a) of Chapter 93A provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Mass. Gen. Laws ch. 93A, § 2(a). "Substantive liability under [Ch.] 93A 'requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or other business persons.'" McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F.Supp.2d 1, 99-100 (D. Mass. 2012) (citations omitted), aff'd, 775 F.3d 109 (1st Cir. 2014) (quoted in Porcaro, 545 B.R. at 397).

Section 9 of Chapter 93A provides in relevant part:

> Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

> …
>
> [I]f the court finds for the petitioner, recovery shall be in the amount of actual damages … or up to three but not less than two times such amount <u>if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or</u> that <u>the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two</u>.
>
> …
>
> If the Court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall … be awarded reasonable attorney's fees and costs incurred in connection with said action ….

Mass. Gen. Laws ch. 93A, § 9(1), (3), and (4) (emphasis added).

In order for issue preclusion to compel entry of a judgment in the Plaintiff's favor in this proceeding, the Plaintiff must demonstrate that the State Court finally and necessarily determined that:

1. the Plaintiff suffered an injury;
2. the injury was the result of the Defendant's actions;
3. the Defendant either intended to cause her injury or that he was substantially certain his acts would cause injury; and
4. the Defendant had no just cause or excuse for the action resulting in injury.

See <u>Bradley</u>, 466 B.R. at 588.

In ruling on the Plaintiff's Chapter 93A count, the State Court stated the following:

> In the circumstances of this case, Murphy's collection of a $10,000 deposit without a clear writing detailing the circumstances under which the deposit might be withheld or forfeited was an unfair and deceptive practice in trade or commerce within the meaning of Massachusetts General Laws Chapter 93A.  The failure to return the deposit upon demand, where the defendant had performed no services nor provided any materials to the plaintiff prior to her demand for return of the deposit, constitutes an unfair or deceptive act within the meaning of M.G.L. Chapter 93A.  <u>The defendant's failure to return the deposit, or to make any offer of settlement, after three written demands, including the Chapter 93A demand letter sent to him in January 2014, violated Chapter 93A, Sections 2 and 9, and entitles the plaintiff to recover multiple damages and attorneys fees.</u>  In this case, considering all of the facts and circumstances, the court deems it appropriate to double the compensatory damages.  Therefore the amount of plaintiff's compensatory damages is $20,000.

> In connection with the plaintiff's claim for attorney fees, her attorney submitted an Affidavit of Attorney's Fees, with attached invoices totaling $54,212 .20, including fees and out-of-pocket expenses. The court has carefully reviewed the affidavit and the invoices. The court observes the bulk of the fees charged are for services performed after it became clear that the case would not settle, but would proceed to a trial. The defendant's refusal to make a reasonable settlement offer forced the plaintiff to incur substantial additional fees. That said, the court finds some of the fees excessive for a case of this nature. For example, for each court appearance, and for the deposition of the defendant, two attorneys appeared on behalf of the plaintiff incurring hourly rates totaling $715 per hour and $850 per hour for these appearances. The hourly rates billed by plaintiff's attorneys would suggest a level of competence requiring only one attorney to be present for these matters. Without delving into the tedium of picking apart each of the invoices submitted by counsel, the court concludes that the reasonable amount due plaintiff's attorneys for their time and expenses is $30,000. Attorneys' fees shall be awarded under M.G.L. Chapter 93A in that amount.

State Court Decision at 3-4 (emphasis added).

The State Court Decision is clear that the Plaintiff suffered an injury as a result of the Defendant's actions, i.e., she paid the Defendant a deposit of $10,000.00, which he failed to return upon demand, even though he did not perform any services or other work for the Plaintiff, he did not purchase any materials, and he did not pay any subcontractors. The Court finds that the State Court necessarily determined that the Defendant's actions caused injury to the Defendant, which are the first two elements of the Plaintiff's § 523(a)(6) claim.

The Defendant contends that the State Court did not finally and necessarily determine the last two elements of the Plaintiff's § 523(a)(6) claim, i.e., (i) that the Defendant either intended to cause the Plaintiff injury or that he was substantially certain his acts would cause injury, or (ii) that the Defendant had no just cause or excuse for the action resulting in injury.

The State Court's only statement regarding the doubling of damages was as follows:

> The defendant's failure to return the deposit, or to make any offer of settlement, after three written demands, including the Chapter 93A demand letter sent to him in January 2014, violated Chapter 93A, Sections 2 and 9, and entitles the plaintiff to recover multiple damages and attorneys fees.

The State Court Decision contains no further explanation. The Plaintiff contends that because the State Court found that she was injured as a result of an "unfair and deceptive practice," the

12

State Court necessarily determined that the Defendant's actions were "wrong" and "without just cause or excuse" and therefore "malicious" within the meaning of § 523(a)(6). With respect to the "willful" requirement, the Plaintiff argues in a conclusory fashion that the State Court "directly and correctly concluded that the Defendant's actions were willful and caused significant harm." The Plaintiff further contends that because an award of double or treble damages under state law only occurs where "the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation," the "willful" requirement of § 523(a)(6) is satisfied.

      The willfulness requirement of § 523(a)(6) is that "the debtor intended to cause the injury or there was a substantial certainty the injury would result from the debtor's act." To award double damages the State Court must have concluded, as Section 9 of Chapter 93A provides, that "<u>the use or employment of the act or practice was a willful or knowing violation of said section two</u> **or** that <u>the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two</u>" (emphasis added). However, it is not clear from the State Court Decision whether the State Court found that the Defendant's acts were "a willful or knowing violation" of Chapter 93A or whether it found that that the Defendant's "refusal to grant relief upon demand was made in bad faith."

      This case is unlike other cases where the state court has made specific findings that the debtor's actions were "willful, malicious, and unjustified," "intentional," "without justification," and "extremely egregious." <u>See, e.g.</u>, <u>Piccicuto v. Dwyer</u>, 39 F.3d 37, 39 (1st Cir. 1994); <u>Porcaro</u>, 545 B.R. at 390; <u>Tacason</u>, 537 B.R. at 45; and <u>Lee v. Daniel (In re Daniel)</u>, 568 B.R. 162, 173 (Bankr. D. Mass. 2017). Instead, this case is more similar to other cases where the relevant state court findings are "paltry" and "opaque." <u>See, e.g.</u>, <u>Bradley</u>, 466 B.R. at 589; <u>Trenwich Am. Reinsurance Corp. v. Swasey (In re Swasey)</u>, 488 B.R. 22, 43, 45 (Bankr. D.

13

Mass. 2013); see also Porcaro, 545 B.R. at 400 ("[T]he fulsome nature of the record before us distinguishes the instant case from others where a paltry record prevented the court from applying the doctrine of issue preclusion."). Accordingly, the Court cannot conclude that the State Court Decision included the requisite findings to warrant the application of issue preclusion with respect to the Plaintiff's claim under § 523(a)(6). As noted by Judge Feeney in the Swasey decision, "[a]pplication of the willful and malicious standards applicable to § 523(a)(6) … is challenging in circumstances where a plaintiff seeks to use collateral estoppel, especially when the injuries are financial and the court whose judgment the plaintiff seeks to enforce has not made specific findings as to the debtor's intent to injure." Swasey, 488 B.R. at 41.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that neither the Plaintiff nor the Defendant is entitled to judgment on the pleadings with respect to the Plaintiff's claim under § 523(a)(2)(A) in Count I of the Complaint. The Court finds further that the Plaintiff is not entitled to judgment on the pleadings with respect to her claim under § 523(a)(6) in Count II of the Complaint. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   March 26, 2018               /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge